The document below is hereby signed.

Signed: April 29, 2010.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MAXIMUM DEVELOPERS | ) | Case No. 07-00539 |
| INVESTMENTS, LLC, | ) | (Chapter 7) |
| | ) | For Publication in West's |
| Debtor. | ) | Bankruptcy Reporter |

MEMORANDUM DECISION RE
<u>OBJECTION TO CLAIM OF KINGSWAY & ASSOCIATES</u>

This supplements the oral decision of April 28, 2010, regarding the objection (Dkt. No. 250) of David S. Alterman and Equity Lending Defined Retirement Plan (collectively "Alterman") to the claim of Kingsway & Associates (assigned Claim No. 12 on the claims register).

I

When this case commenced, the land records of the District of Columbia included a purported release of the deed of trust securing Kingsway's claim, and I will assume in Alterman's favor (without actually deciding the issue) that the release was in good form and that nothing in the land records or other circumstances would have suggested to a purchaser that the release might be invalid. Alterman contends (with the trustee's

authorization at the hearing permitting Alterman to raise the contention) that Kingsway is not entitled to be treated as holding a secured claim because the trustee had the right as a hypothetical bona fide purchaser under 11 U.S.C. § 544 to hold the real property free of Kingsway's lien based on the release of record of the lien.

The release, however, was unauthorized. It was executed by Paul Hester on behalf of Kingsway, but Hester was not the trustee vested by the deed of trust with authority to act on Kingsway's behalf and had no authorization otherwise from Kingsway to execute a release on its behalf. Nevertheless, Alterman cites to an ancient decision by the Supreme Court of the District of Columbia (the predecessor to the United States Court of Appeals for the District of Columbia Circuit), *Eldridge v. Conn. Gen. Life Insur. Co.,* 10 D.C. (3 MacArth.) 301 (D.C. 1879), as supporting his view that a bona fide purchaser without notice of an infirmity in a release of a deed of trust takes free of that deed of trust.

*Eldridge* does not support Alterman's argument. Although *Eldridge* held that "a mortgagee with knowledge of the fraudulent discharge of a prior mortgage is not a *bona-fide* purchaser," *Eldridge*, 10 D.C. (3 MacArth.) at 313, it does not follow, as Alterman argues, that a mortgagee *without* knowledge of the fraudulent discharge of a prior mortgage *is* a bona fide purchaser

regardless of who made the fraudulent release.  The critical fact that made notice a relevant issue in *Eldrige* was that the existing deed of trust was fraudulently released by the trustee under that deed of trust.

The entity in *Eldridge* that claimed bona fide purchaser status was a company lending money, secured by a new deed of trust, in reliance upon the release of the existing deed of trust on the property.  It argued that the trustee under the purportedly released deed of trust "was the trusted agent of the *cestui que trust*, that they had clothed him with authority to release the deed, and they were concluded by his act, especially as the company had taken their conveyance in good faith." *Eldridge*, 10 D.C. (3 MacArth.) at 313-14.  But the court found that the purchaser was on notice that the release was possibly not valid, and thus it could not be treated as a bona fide purchaser without notice.  In other words, a release by a trustee under a deed of trust can be relied upon by a purchaser, but not if the purchaser has notice that the underlying debt, contrary to the release, has not actually been satisfied.

A similar rule might apply, as in Virginia, when the original holder of a note secured by a deed of trust, records, *after* the note has been sold, a false certificate of satisfaction: if the purchaser of the real property is not on notice that the underlying promissory note has been transferred

or has not actually been satisfied, the purchaser, on the strength of the release, takes free of the deed of trust. *See HSBC Bank USA, N.A. v. Gold (In re Taneja)*, 2010 WL 1039805 (Bankr. E.D. Va. Mar. 16, 2010) (Mitchell, J.). From *Eldridge* and *In re Taneja* the conclusion may be drawn that a purchaser, unless on notice (either actual notice or inquiry notice) that the note has not been satisfied, is entitled to rely on the representations of the trustee under the deed of trust (or of the entity stated in the land records to be the beneficiary of the deed of trust) that the secured note has been satisfied.

Here, in contrast to *Eldridge* and *In re Taneja*, Hester was neither the trustee under the deed of trust nor an agent of the entity that the land records indicated was the beneficiary of the deed of trust. The release was by an individual with no authority to act on behalf of Kingsway. As a fraudulent release, without Kingsway having acted in any way that would lead a hypothetical purchaser to believe that Hester had apparent authority to act on Kingsway's behalf, it ought not be treated as effective as against Kingsway. As stated in *M.M. & G., Inc. v. Jackson*, 612 A.2d 186, 191 (D.C. 1992):

> It is well settled that a forged deed cannot validly transfer property and that even a bona fide purchaser takes nothing from that conveyance. *Unity Banking & Saving Co. v. Bettman*, 217 U.S. 127, 135, 30 S.Ct. 488, 489-90, 54 L.Ed. 695 (1910); *Harding v. Ja Laur Corp.*, 20 Md.App. 209, 315 A.2d 132, 135-36 (Md. 1974).

By the same token, a fraudulent release, by someone not

authorized to act on behalf of the beneficiary of record under a deed of trust, ought not be effective to release the deed of trust unless the beneficiary was negligent.

Alterman argues that the release was not a *forged* release but at best a *fraudulent* release, and thus the rule regarding forged deeds ought not apply here.  There is no reason why a release by someone not authorized to act on the beneficiary's behalf ought to fare any better than a release containing a forgery of the beneficiary's signature.  Both are acts not authorized by the beneficiary of record (or by someone, like the trustee under the deed of trust, vested with apparent authority to act on the beneficiary's behalf).  As noted in *In re Taneja*:

> In the majority of states, the modern rule is that the holder of a note secured by a recorded mortgage or deed of trust that is released without authority will prevail over an innocent purchaser of the property. "Reinstatement and Restoration of Mortgages Released or Discharged Without Authorization, as Against Subsequent Purchasers, Lienholders, Judgment Creditors, and the Like, Without Notice," 35 A.L.R.2d 948 § 5[a] (1954 & Cumm. Suppl.) ("A mortgage discharged of record by a fraud or forgery without the participation, knowledge, or negligence of the mortgagee, takes precedence over the rights of subsequent innocent purchasers or encumbrancers."); *see, e. g., First Fin. Savings Bank, Inc. v. Sledge*, 106 N.C.App. 87, 88, 415 S.E.2d 206, 207 (1992) ("The discharge of a perfected mortgage upon public record by the act of an unauthorized third party entitles the mortgagee to restoration of its status as a priority lienholder over an innocent purchaser for value").

*In re Taneja*, 2010 WL 1039805 at 5.  The ALR annotation cited to in *In re Taneja* distinguishes the type of cases it discusses

5

(such as this case) from:

> cases involving the release of the deed of trust by the trustee in contravention of the terms of the instrument or without the authority of the cestui

(an example of which would be *Eldridge*) and from:

> cases in which the position of the subsequent purchaser or encumbrancer as against an assignee whose security was released by the record mortgagee without the assignee's authority is determined on the basis of the subsequent party's lack of notice, actual or constructive, of the assignment, or upon the basis of the assignee's negligence in failing to record

(an example of which would be *In re Taneja*).  See 35 A.L.R.2d 948 § 1 (1954 & Cumm. Suppl.).  This case fits within neither the factual scenario of *Eldridge* (because the release was not executed by the trustee under the deed of trust) nor the factual scenario of *In re Taneja* (because the release was not executed by the holder of record of the note secured by the deed of trust). A hypothetical purchaser would not be entitled to take free of the deed of trust based on the fraudulent release.

Kingsway is not guilty of laches in asserting its lien rights, and no negligence of Kingsway led to the perpetration of the fraudulent release.  The objection to Kingsway's claim's secured status will be overruled.

II

Alterman and the trustee also question the amount claimed to be owed to Kingsway.  The note provided for $23,200 of principal to be paid with interest in 90 days in the total amount of

$27,000.  The note then provided that if the note was not paid within 90 days, interest at 18% per annum would be owed.  For the reasons stated at the hearing, the proper interpretation of the note is that interest of $3,800 accumulated in the first 90 days, and thereafter interest ran on the principal amount of $23,200 at 18% per annum, not on the $27,000 owed as of the 90th day.  I computed the amount owed on that basis: if I made an error in my mathematical calculation, any party may bring that to my attention by a motion filed within 14 days after entry of the order fixing the allowed amount of the claim.

                             III

  An order follows.

                                    [Signed and dated above.]

Copies to: Jeffrey M. Sherman, Esq. (counsel for Alterman); Kevin R. McCarthy, Esq. (Chapter 7 Trustee); Richard H. Gins, Esq. (counsel for Kingsway); Office of U.S. Trustee.